976 So.2d 624 (2008)
Robert J. BURNSTINE, Appellant,
v.
Desiree TOWNLEY, Appellee.
No. 5D06-4412.
District Court of Appeal of Florida, Fifth District.
February 29, 2008.
*625 Barry Rigby, Orlando, for Appellant.
No Appearance for Appellee.
THOMPSON, E., Senior Judge.
Robert Burnstine challenges the calculation of his income for child support in the trial court's final judgment of paternity that adopted the general magistrate's report and recommendation. Although Burnstine objected to the general magistrate's report and recommendation, the trial court did not conduct an evidentiary hearing. We reverse to allow an evidentiary hearing and direct the trial court to make specific findings in recalculating Burnstine's gross income.
The fluctuations and uncertainty inherent in entrepreneurial income make it difficult to calculate. At the evidentiary hearing before the general magistrate, Burnstine explained that he owned a business that sells promotional advertising using cold air balloons of the type frequently used by automobile dealerships. He is the sole shareholder, officer, and director. Besides himself, it employs two full-time employees and one part-time employee. Burnstine has a bachelor's degree in information systems, business, and English and has been self-employed since college. He had a furniture store for five years, but it closed in December 2003 due to depleted funds after an attempt to open another store with his brother, who died unexpectedly. He had no income from 2004 until June 2005 and lived off his savings. His sole asset was the equity in his house, which he sold in June 2005 to obtain a mortgage on a new house and to buy the balloon business for $675,000. After he sold the house he had about $20,000 to live on. In 2006 he took about $10,500 out of the business as income and used savings for the rest of his personal expenses.
Burnstine operates the business out of his house. About 1000 square feet of his 2700 square-foot house are dedicated to the business. The business pays the monthly interest of $2800 on the house mortgage, but not the principal. He reports that it does not pay other personal expenses for him. He has not shown income on his tax returns for three years. His new business has seasonal fluctuations; the fourth quarter is usually negative.
Burnstine listed $7900 in expenses on his financial affidavit. He listed $4200 for two mortgage payments; the business pays the mortgage interest. He personally pays for his car insurance, gasoline, and medical insurance. He provided the company's first-year financial statements for the nine-month period ending 30 September *626 2006. The statements listed gross receipts of $552,956.87 and mortgage interest expenses of $33,227.43. He also produced a residential loan application used to obtain the home mortgages; it listed base employment income of $7692 per month. The financial statement and loan application were admitted without objection.
Desiree Townley testified that she earned $42,000 from regular employment. She was familiar with the death of Burnstine's brother, the closure of his furniture business, and periods during which he was unemployed. The record includes evidence of his checks that showed regular monthly payments in 2003 of $812.50 and, in 2004, $680. Since April 2006, he has paid her $600 per month, and she acknowledged that he paid her $3000 in February 2006 to catch up on child support. She did not keep records of his support payments; her testimony was from memory. Burnstine testified that he had paid her at least $600 a month in child support during his teenaged son's entire life except for the period from January 2005 until June 2006 after he sold the furniture business. Between January 2005 and March 2006, he paid her $89 or $98 per month. Burnstine contributed to the tuition and expenses for their son's private middle school.
The general magistrate filed a report and recommendation that determined in pertinent part that Burnstine's net monthly income was $15,448.56, which represented the monthly average of the business's net income of $139,034.22 from its nine-month financial statement. Therefore, it awarded Townley monthly child support of $1300.68. It rejected any need to make written findings to support the income it attributed to Burnstine because, citing Bromson v. Dep't of Revenue, 710 So.2d 154 (Fla. 4th DCA 1998), and Silberman v. Silberman, 670 So.2d 1109 (Fla. 3d DCA 1996), it was not imputing income to Burnstine because he was not unemployed or underemployed.
Burnstine filed timely exceptions to the general magistrate's report, and requested an evidentiary hearing. He complained that the report did not reflect whether the child support award would be applied retroactively because the evidence demonstrated long periods of unemployment. Further, he rejected the general magistrate's characterization that he claimed he had no income; his business and personal income are blended, and the problem was what level of income would be attributed to him personally. His financial affidavit reflected living expenses of $7905.66 per month, which he paid with his savings; thus, he contended his income was less than the expenses figure and far less than the magistrate's determination of $15,448.25. He also criticized the magistrate's use of a high monthly income of $14,166 in 2002 from his established furniture business in order to justify the current income figure it reached as an amount that Burnstine "is capable of producing."
The court denied Burnstine's exceptions and entered a final judgment that ratified, approved, and incorporated the general magistrate's report and recommendations. Burnstine filed a timely motion for rehearing and clarification, arguing that the general magistrate's calculation of his income did not account for business expenses and improperly relied on high past earnings that were not probative of his current income. This appeal ensued.
Our review of the trial court's adoption and ratification of a general magistrate's report and recommendation is subject to an abuse of discretion standard. Collado v. Pavlow, 951 So.2d 69, 70 (Fla. 5th DCA 2007).
Florida Family Law Rule of Procedure 12.490(f) provides that if exceptions *627 are filed, they shall be heard on reasonable notice by either party or the court. A litigant who requests a hearing on exceptions, but is not afforded one, is deprived of due process. Id. Burnstine requested an evidentiary hearing in conjunction with his filing of exceptions to the general magistrate's report. Therefore, the trial court erred when it denied his exceptions without first conducting a hearing. Yoxsimer v. Yoxsimer, 918 So.2d 997, 998 (Fla. 2d DCA 2006).
Burnstine contends that the magistrate's determination of his income was not supported by competent substantial evidence. The general magistrate's report and recommendation relied on the corporation's nine-month financial statement of net income as the best evidence of Burnstine's income. The magistrate simply divided the net income of $139,034.32 by nine months to arrive at his monthly net income of $15,448.25.
Citing Bromson, 710 So.2d at 155, and Silberman, 670 So.2d at 1110, the general magistrate excused the requirement of making specific factual findings when the court is not asked to impute income, but instead, to simply make a factual determination of a party's actual income. The reasoning is that factual findings are required only when the court imputes income to an unemployed or underemployed party. The obligors in Bromson and Silberman were fully employed, and the court merely made a factual determination of income. The Bromson court cautioned, however, that specific factual findings facilitate appellate review, particularly in light of the substantial impact the findings have on the lives of both parents. 710 So.2d at 156. Unlike the obligors in Bromson and Silberman, who were attempting to understate or misrepresent income, Burnstine produced professionally prepared financial statements and income tax returns.
To facilitate review in this case, we direct the trial court to make specific factual findings of Burnstine's income. Burnstine presented three sources of evidence of his income and testified that he had taken $10,500 in income distributions from the corporation that year. The loan application reflected that he had earned a monthly income of $14,166 from the furniture business from 1998 through January 2002, and zero income from two different furniture businesses from February 2002 through November 2004. Florida Family Rule of Procedure 12.285(d)(6) requires the disclosure of a recent loan application as evidence relevant to a request for child support.
Burnstine does not dispute that the corporation's payments of his mortgage and other expenses are income to him for purposes of calculating child support. § 61.30(2)(a)13., Fla. Stat. (2006); Layeni v. Layeni, 843 So.2d 295, 297 (Fla. 5th DCA 2003). During the last eight years of Burnstine's entrepreneurial career, his efforts paid very well for about five years, then the last three years produced zero income. The $15,448 income figure neither represents an established income stream nor does it reflect recent periods when Burnstine's entrepreneurial efforts were unproductive.
As Judge Klein pointed out in Bromson, 710 So.2d at 155, regarding a child support obligor's income determination:
Because the number which the trial court ultimately chooses has such a substantial impact on the lives of both parents and children, appellate judges naturally want to satisfy themselves in both underemployment and misrepresentation of income cases that there is evidence to support the numbers. When trial judges explain their reasoning, appellate judges can feel more comfortable about affirming in close cases. Conversely, *628 the lack of an explanation can increase the odds of reversal.
Accordingly, we reverse the trial court's determination that Burnstine had available income of $15,482 per month and remand for the court to provide an evidentiary hearing for his objections to the general magistrate's report. Upon remand the trial court shall recalculate and make specific factual findings of Burnstine's gross income. Any retroactive child support would also require specific findings regarding imputed income. The remand will permit Burnstine to provide additional financial statements that will either buttress the court's earlier determination of income or demonstrate that the figure was inflated.
Burnstine contends that it was an abuse of discretion to disregard evidence of his income from his financial affidavit and loan application. A child support determination is within the sound discretion of the trial court, subject to the statutory guidelines and the reasonableness test. Matthews v. Montgomery-Matthews, 913 So.2d 1201 (Fla. 4th DCA 2005). The trial court may weigh evidence of Burnstine's income differently, and even disregard evidence when reasonable to do so. Here, however, the general magistrate and trial court abused their discretion in relying solely on evidence of insufficiently established income not shown to be consistently available to him.
REVERSED and REMANDED for further proceedings.
PALMER, C.J., and SAWAYA, J., concur.